IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARY R. TORRES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0144-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Mary Torres challenges the Social Security Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq.*, and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et. seq*.

Torres argues that the Administrative Law Judge ("ALJ") erred in discrediting Torres's credibility, assigning Torres a residual functional capacity ("RFC") that was not supported by substantial evidence, and by relying on testimony from a vocational expert based on a hypothetical that did not accurately reflect Torres's impairments. The Court finds some of these arguments persuasive, and remands the case back to the ALJ for further proceedings.

**I.     Background**

The complete facts and arguments are presented in the parties' briefs and will be

1

duplicated here only to the extent necessary.[1] Torres applied for disability benefits in July 2005, claiming arthritis, chronic obstructive pulmonary disease ("COPD"), and seizures. After a hearing, the ALJ denied benefits to Torres in a September 2008, decision.

At a hearing on June 3, 2008, Lynn Curtis, M.D., testified that review of the medical records revealed Torres had diagnoses of COPD, migraines, history of seizure disorder, low back pain with mild degenerative arthritis in the low back, history of major depression, post traumatic stress disorder (PTSD), and borderline intellectual functioning. (Tr. 423). He indicated Torres would have a sedentary residual functional capacity. (Tr. 424). Torres's COPD was mild to moderate. He testified Torres's mental capacity would cause difficulty with maintaining her medications, which would cause her to miss days of work. He noted it had been documented in the record that Torres had been non-compliant. (Tr. 424-25). Dr. Curtis testified that based on the medical record and her testing, Torres was probably not going to comply with her medication and would probably miss about eight days a month because of this. (Tr. 427). The ALJ then asked if Torres's non-compliance was a matter of choice or if she was not able to accomplish this on her own because of her mental state. Dr. Curtis responded that Torres operates at a very concrete level, and thought that her family probably had to supervise her. (Tr. 429).

Torres testified at the hearing that she could not work because of problems breathing, arthritis in her upper and lower spine, and seizures. Torres stated she had lived in a house with her brother for three years. She said she could occasionally cook and do laundry, but

---

[1] Portions of the parties' briefs are adopted without quotation designated.

her daughter would come over nearly every day and check on her, give her medication, and cook meals. (Tr. 438).

Torres was not certain what kind of seizures she had, but she said she had experienced two that year that were severe enough to go to the emergency room. (Tr.436-37). She was previously on disability from 1994 until 2001 for seizures and migraines. She called and told Social Security she wanted to try and work at that time. Although her seizures and migraines did not stop, she took lots of Extra Strength Tylenol to make it to work. She could not do that now because the headaches were very severe and she would have to go to the emergency room and get shots. (Tr. 441-42). She went to the emergency room because of a migraine in April 2008. She had a severe headache about every two to three months, and could not function because of blurry vision, nausea, and vomiting. She also had less severe headaches, and said she would wake up and go to sleep with a mild headache every day. (Tr. 444-45). Torres sometimes forgets her medication because she takes so many kinds. Her daughter had been helping her with this the past couple of years. (Tr. 448).

On April 14, 2003, Torres presented to Neighborhood Family Care and reported she had worsening pain in her back. A physical exam revealed tenderness to light palpitation. The assessment was muscle spasm. Torres was given prescriptions for Zanaflex, Naprosyn, and Darvocet, and was instructed to use heat. (Tr. 346). Torres returned on April 22, 2003, and reported continued back pain. Her doctor continued her medication and ordered an MRI. (Tr. 345).

On April 26, 2003, Torres underwent magnet resonance imaging (MRI) of her lumbar

and thoracic spine. Results from the thoracic spine were unremarkable. MRI of the lumbar spine revealed mild L5-S1 facet degenerative changes. (Tr. 352-53).

On May 6, 2003, Torres returned to Neighborhood Family Care to follow up on back pain and MRI results. She reported she had a headache and pain in her upper thoracic and lower lumbar spine. Physical exam revealed tenderness to palpation in the upper thoracic and lower lumbar spine, and diffuse lower abdominal and mid-epigastric pain. The assessment was chronic pain and abdominal pain. (Tr. 345).

On April 11, 2005, Torres presented to the emergency room at Independence Regional Health Center reporting three days of back pain. She then told the physician that her back was no longer hurting but her daughter said it looked like somebody beat her up. On exam, the physician noted Torres started moving forward before she touched her back. There was no muscle spasm. She was tender over both flanks so urinalysis was ordered that revealed a moderate amount of blood. A urine drug screen was positive for opiates and tricyclicanti depressants. She had been given Vicodin for an ear infection two days earlier. The impression was back pain, drug-seeking behavior, and hematuria. Torres was advised to follow up with her regular physician. (Tr. 323-24).

On October 8, 2005, Torres presented to Michael Schwartz, Ph.D., for a consultative psychological evaluation. She stated she could not do any lifting and needed help washing her hair and doing laundry. She said her daughter helps her with this. Torres told Dr. Schwartz she forgets her medication and her appointments. On the Wechsler Memory Scale III (WMS-III) she had an immediate memory index score of 61 and a general memory index

4

score of 66, indicating severe memory impairment. Dr. Schwartz noted Torres appeared to be adequately motivated and diligent in carrying out the tasks and followed the directions to the best of her ability. He believed her scores were valid estimates of her current level of intellectual functioning.

He believed she had impaired attention, concentration, and short-term memory, and she appeared to be depressed and fearful. He believed it would be difficult for her to interact on a job. His diagnostic impressions were cognitive disorder, memory impairment; posttraumatic stress disorder(PTSD), chronic, moderate intensity; major depression, single episode, severe, without psychotic features. Her Global Assessment of Function (GAF) was 50.

In a Report of Contact dated October 27, 2005, Dr. Schwartz indicated that in the absence of medical evidence of a seizure disorder or evidence of traumatic brain injury, Torres's test performance was equally explainable as representative of a person functioning in the borderline intellectual level experiencing preoccupation with her situation and medical problems with emotional overlay. It was noted the majority of her WMS-III Primary Index scores were in the borderline range. (Tr. 227).

On November 30, 2005, Torres presented to the emergency room at Independence Regional Health Center and reported experiencing a seizure off and on for thirty minutes. She was given Tegretol and discharged. Impression was seizure. (Tr. 282-89). On May 16, 2007, Torres presented to Neighborhood Family Care and reported she had been suffering from a headache for three days. She had been out of Tegretol for one month. The

impression was headache, migraine vs Tegretol withdrawal; seizures; asthma/COPD; and allergies. Her doctor provided samples of Relpax and restarted Tegretol. (Tr. 341).

On October 24, 2007, Torres presented to the emergency room at Centerpoint Medical Center and reported she had a severe headache and had a history of migraines. She described blurred vision, nausea, and neck pain. Her headache was exacerbated by light, noise, and movement. The clinical impression was migraine headache. Torres was given Vicodin. (Tr. 374-78).

On March 6, 2008, Torres returned to Neighborhood Family Care and complained of worsening back pain. She said it especially hurt to bend or push. A physical exam revealed tenderness in the thoracic spine and decreased range of motion in the lumbar spine. Her doctor prescribed Naprosyn and Flexeril. (Tr. 371).

On April 7, 2008, Torres presented to the emergency room at North Kansas City Hospital and reported she was suffering from a headache that had started eight days ago. She said she had headaches sometimes lasting three weeks. A head CT was unremarkable. Torres was given Demerol and Phenergan and her pain improved. She was discharged with clinical impression of acute severe headache, and told to follow up with her primary care physician. (Tr. 384-95)

On April 12, 2008, Michael Schwartz, Ph.D., performed a second consultative psychological examination. (Tr. 363-69). Dr. Schwartz noted Torres's daughter would come over and help Torres with most of her daily activities. She cleaned, helped with laundry, cooked, shampooed Torres's hair, and stayed in the house while Torres bathed for fear she

6

might fall. Torres's daughter also handled Torres's money. Torres appeared to be quite dependent upon her daughter. Torres said her concentration was not good, because she gets frustrated and cannot remember what she is doing. Her daughter sets alarm clocks to remind Torres when to take medication.

Dr. Schwartz noted Torres appeared to be of approximately borderline intelligence, as indicated in prior psychological testing. Torres appeared to be mildly depressed, and his predominant clinical impression was of her being very passive and dependent upon her daughter to care for her. He believed Torres could remember work location and procedures and could understand and follow simple directions. He thought she had adequate attention, concentration, and short-term memory for simple tasks. He did not detect any severe psychiatric symptoms that would prevent her from working. His diagnostic impressions were dysthymic disorder; borderline intellectual functioning; seizure disorder; migraine headaches; asthma; COPD; and arthritis. Her GAF was 60. Dr. Schwartz believed Torres was capable of managing or directing management of benefits in her own best interest, and said her daughter would aid her in this regard. (Tr. 363-65). In a Medical Source Statement of Ability to do Work-Related Activities(Mental); Dr. Schwartz indicated Torres had no impairment in understanding, remembering, and carrying out simple instructions. He noted she had a mild restriction in understanding, remembering, and carrying out complex instructions. (Tr. 367-69).

On July 22, 2008, Ann Y. Lee, M.D., performed a consultative disability evaluation. Dr. Lee noted a question of decreased effort throughout the exam. She reported that

palpation of the back revealed no significant tenderness. Dr. Lee indicated there would be no limitations on Torres's ability to sit or stand throughout an eight hour work day. She reported Torres could lift and carry up to 50 pounds continuously, and up to 100 pounds frequently. There were no limitations on use of hands or feet, postural activities, or environmental factors. (Tr. 403-08).

## II. Analysis

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision." *Cox v. Barnhart*, 245 F.3d 606, 608 (8th Cir. 2003) (internal quotes omitted).

### A. The ALJ's Discrediting of Torres's Subjective Complaints

Torres argues that substantial evidence did not exist for the ALJ to discredit Torres's subjective complaints of pain. The Eighth Circuit has set out several factors an ALJ should consider in assessing a claimant's credibility: "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (internal quotes omitted). An ALJ need not discuss each such factor "as long as he acknowledges and considers the factors before discounting a claimant's subjective complaints." *Id.* (internal quotes omitted). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the

8

courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).

Torres first argues that there was not substantial evidence for the ALJ's relying, in order to discredit Torres's testimony, on evidence of Torres's drug-seeking behavior. Torres does not deny that an emergency-room examining physician assessed Torres with drug-seeking behavior in April 2005, and that the same physician found traces of an antidepressant for which Torres did not have a prescription. (Tr. 323-24). But Torres argues that this is an insufficient justification for discrediting Torres because that physician also found objective evidence of Torres's discomfort in the form of blood in Torres's urine and tenderness, because there is no other direct evidence of drug-seeking behavior in the record, and because Torres had been prescribed the antidepressant Lexapro in the past.

The Court disagrees with Torres, and finds that substantial evidence exists for the ALJ's conclusion. First, although the ALJ did not discuss the complications found in Torres's April 2005 emergency-room visit, the ALJ was simply adopting the conclusion of the examining physician, who assessed drug-seeking behavior with full knowledge of the objective evidence of Torres's discomfort. Second, even if Torres is correct that she was only formerly assessed with drug-seeking behavior once, the ALJ could reasonably be skeptical that the April 2005 incident was truly an isolated one. For example, at least one other examiner on the record questioned Torres's effort during examination, suggesting that Torres is willing to exaggerate symptoms. (Tr. 400). Thus, the ALJ was entitled to rely on his observation that Torres frequently visited the emergency room asking for narcotics, along with the formal assessment of drug-seeking behavior, to discredit Torres's testimony. This

is especially true here, where the ALJ observed that Torres "was quite articulate in answering questions throughout the hearing. It appears [Torres] might be exaggerating her symptoms to support her claims for benefits." [Tr. 24]. The Court is reluctant to substitute its own judgment on this point for that of the ALJ, who was able to personally observe Torres at the hearing. *See Morrissey v. Welsh*, 821 F.2d 1294, 1302 (8th Cir. 1987). Third, even if Torres was at one time prescribed Lexapro, that would not account for the findings of the physician in April 2005, which showed a tricyclic antidepressant that could not be Lexapro.

Torres also argues that the ALJ erred in failing to consider the possibility that Torres's complaints of pain were the result of some combination of mild back complication – for which there is objective evidence – and "pain that is psychological in origin." [Doc. # 7 at 19]. This argument is also unpersuasive. The case that Torres relies on for this proposition is distinguishable because in that case there was "uncontroverted evidence that [the claimant's] hysteria caused him to convert stress into pain." *Mellon v. Heckler*, 739 F.2d 1382, 1383 (8th Cir. 1984). Torres points to no such evidence in this case. Because there was evidence on the record that Torres was exaggerating her pain in pursuit of drugs and exaggerating other symptoms in pursuit of benefits, and because there was only indirect evidence in the record from which the ALJ could infer that Torres was experiencing pain that was psychological in origin, the ALJ did not err by failing to explicitly explore the possibility of psychologically based pain. Rather, substantial evidence exists for the ALJ's discrediting Torres's credibility.

**B.     Torres's RFC**

Torres argues that the ALJ erred by arbitrarily ignoring Dr. Curtis's testimony that Torres's borderline intellectual functioning would cause her to be noncompliant in her medication, which, in turn, would cause her to miss eight days of work per month. Torres argues that this omission was a violation of the ALJ's duty to "show that all evidence was evaluated." *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir. 1987). But Torres acknowledges that the ALJ discussed this point with Dr. Curtis during the hearing, and that the ALJ stated on the record that he would likely discount Dr. Curtis's conclusion that Torres would miss eight workdays per month if such a conclusion were based on noncompliance with medication. The ALJ clearly found that Torres was exaggerating her mental limitations. Although conflicting evidence in the record exists on this point, there is substantial evidence to support the ALJ's conclusion. Further, Torres's testimony and Dr. Schwartz's opinions regarding the ability of Torres's family to help her comply with medication constitute substantial evidence for the ALJ's conclusion that Torres's mental limitations would not cause her to miss eight days of work per month.

Torres argues that the ALJ erred by providing an inaccurate description in his decision of Dr. Schwartz's reports. The Commissioner admits that the ALJ incorrectly attributed to Dr. Schwartz the opinions of Dr. Allen that Torres had no restriction in activities of daily living and only mild difficulties in social functioning, concentration, persistence, and pace. (Tr. 213-27). The Commissioner argues that this is harmless error because the ALJ properly presented this information as coming from a doctor, albeit the wrong one. The Court is not convinced by this argument. The Act attaches great importance to the source of medical

information. For example, if the ALJ really believed these statements originated from Dr. Schwartz, then the ALJ might have discounted Dr. Schwartz's conclusions as internally inconsistent, rather than weighing them against Dr. Allen's separate, internally consistent conclusions. *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) ("When a treating physician's record includes inconsistencies, his own inconsistency may undermine or diminish the weight afforded to his opinion."). Because the ALJ was confused about the source of this medical opinion, it is impossible for the Court to determine what weight, if any, the ALJ would have given to that opinion if he correctly attributed it. Remand is thus appropriate on this point. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).

Torres argues that the ALJ erred in finding her migraine headaches were not a severe impairment under the Act and by failing to properly incorporate this impairment into Torres's RFC. An impairment is not "severe" if it does not have a significant impact on an individual's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Id*. (internal citations omitted).

Torres points out that the record shows she went to the emergency room for migraine headaches on several occasions and was prescribed Relpax for the condition. The Commissioner argues that, on the one hand, the ALJ was permitted to discount the effect of these visits on account of Torres's drug-seeking behavior and that, on the other hand, the ALJ included significant limitations in Torres's RFC – which suggests the ALJ included some limitations from migraine headaches in his findings. On the latter point, the

12

Commissioner points out that although a consultative examiner assigned Torres essentially no physical limitations (Tr. 401-08), the ALJ found that Torres was capable only of sedentary work.

The ALJ erred in finding Torres's migraine headaches not severe under the Act. True, the ALJ validly discredited Torres's credibility and treatment for migraine headaches appears to be largely based on subjective complaints. But given the voluminous record of hospital visits and treatment for Torres's migraine headaches, as well as the severe disruption caused by those headaches as consistently described by Torres, substantial evidence does not exist in the record for the ALJ's conclusion that Torres's migraines would not have a significant effect on her ability to work. Because this case is being remanded, the Court need not determine whether the ALJ cured this error by properly considering the effects of Torres's migraines in determining Torres's RFC. On remand, however, the ALJ is instructed to either treat Torres's migraine headaches as severe, or to further develop the record so that substantial evidence exists for a finding that Torres's headaches would not have a significant effect on her ability to work despite her extensive treatment history.

Torres argues that the ALJ erred in failing to consider the side effects of Torres's medication in formulating an RFC. Torres points out that possible side effects of her prescribed medication are drowsiness, headache, dizziness, and weakness. But the Commissioner convincingly argues that these side effects, if present, are consistent with the ALJ's finding Torres capable only of sedentary work, despite opinion evidence on the record that Torres had almost no physical limitations. Thus, the ALJ did not err in his treatment of

13

Torres's side effects.

### C. The Vocational Expert's Testimony

Torres argues that the ALJ erred in relying on the testimony of a vocational expert that was based on a flawed RFC. Because the Court remands for the ALJ to assess a new RFC, the Court need not determine whether the hypothetical based on the old RFC was flawed. The Court agrees with Torres, however, that a hypothetical to a vocational expert must accurately reflect a claimant's impairments, and that any changes in Torres's RFC on remand must be accurately reflected in a new hypothetical to a vocational expert. *Jelinek v. Bowen*, 870 F.2d 457, 459 (8th Cir. 1989).

### III. Conclusion

Accordingly, it is hereby ORDERED that Mary Torres's Petition [Doc. # 1] is GRANTED. The decision of the ALJ is REVERSED and REMANDED for further proceedings that properly attribute the opinions of Dr. Allen and Dr. Schwartz and that treat Torres's migraines as a severe impairment under the Act on the current record.

    s/ Nanette K. Laughrey  
    NANETTE K. LAUGHREY  
    United States District Judge

Dated: January 17, 2012  
Jefferson City, Missouri